1 | RONALD J. TENPAS
Assistant Attorney General
2 | Environment & Natural Resources Division
United States Department of Justice
3 | PATRICIA L. HURST
District of Columbia Bar No. 438882
4 | Trial Attorney
ESPERANZA ANDERSON
5 | Pennsylvania Bar No. 62582
Trial Attorney
6 | Environmental Enforcement Section
Environment & Natural Resources Division
7 | United States Department of Justice
P.O. Box 7611
8 | Washington, DC 20044
Telephone: (202) 307-1242
9 | Fax: (202) 514-2583
Email: patricia.hurst@usdoj.gov
10 |        esperanza.anderson@usdoj.gov

11

(Additional Counsel are listed on the next page)

12

13

14 | IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

15

16

17 | **UNITED STATES OF AMERICA, and**

No.:

18 | **CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL,**

**COMPLAINT FOR RECOVERY OF RESPONSE COSTS; DECLARATORY RELIEF FOR FUTURE RESPONSE COSTS**

19 | Plaintiffs,

20 | v.

**(Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601 - 9675)**

21 | **STERLING CENTRECORP INC., STEPHEN P. ELDER, and**

22 | **ELDER DEVELOPMENT, INC.,**

Defendants.

23

24

25

26

27

28

COMPLAINT FOR RECOVERY OF RESPONSE COSTS

1

1  MCGREGOR W. SCOT
   United States Attorney
2  SYLVIA QUAST, State Bar No. 159011
   Chief, Defense Litigation Unit
3  United States Attorney's Office
   Eastern District of California
4  501 I Street, Suite 10-100
   Sacramento, CA 95814
5  (916) 554-2740 (Tel.)
   (916) 554-2900 (Fax)
6  Sylvia.Quast@usdoj.gov

7  Attorneys for Plaintiff United States of America

8
   EDMUND G. BROWN JR.
9  Attorney General of the State of California
   J. MATTHEW RODRIQUEZ
10 Chief Assistant Attorney General
   KEN ALEX
11 Senior Assistant Attorney General
   MAGARITA PADILLA
12 Supervising Deputy Attorney General
   KIRK MCINNIS, State Bar No. 130952
13 Deputy Attorney General
   1515 Clay Street, 20th Floor
14 P.O. Box 70550
   Oakland, CA  94612-0550
15 Telephone:  (510) 622-2191
   Fax:  (510) 622-2270
16 Email:  Kirk.McInnis@doj.ca.gov

17 Attorneys for Plaintiff California Department of Toxic Substances Control

18

19

20

21          The United States of America, acting at the request of the Administrator of the

22 Environmental Protection Agency ("EPA"), and the California Department of Toxic Substances

23 Control ("DTSC") (collectively "Plaintiffs"), file this Complaint and allege as follows:

24                          STATEMENT OF THE ACTION

25          1.  Plaintiffs file this civil action, pursuant to Section 107(a) of the

26 Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42

27 U.S.C. §§ 9607(a), for the recovery of response costs related to releases and threatened releases

28 of hazardous substances from the Lava Cap Mine Superfund Site located in Nevada County,

COMPLAINT FOR RECOVERY OF RESPONSE COSTS

1  California ("the Site").

2      2.    Plaintiffs further make a claim for declaratory relief, pursuant to Section 113(g)(2)

3  of CERCLA, 42 U.S.C. § 9613(g)(2), for a declaratory judgment that Plaintiffs are entitled to

4  recover from the named Defendants for future response costs related to releases and threatened

5  releases of hazardous substances from the Site.

6                            VENUE AND JURISDICTION

7      3.    This Court has jurisdiction over this CERCLA claim pursuant to 28 U.S.C.

8  §§ 1331 and 1345, and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b).

9      4.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c), and

10  Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the release or threatened release of

11  hazardous substances that gives rise to these claims occurred in this district and because the Site

12  is located in this district.

13                                 PLAINTIFFS

14      5.    Plaintiff United States of America, by the undersigned attorneys, is acting on

15  behalf of the United States Environmental Protection Agency.

16      6.    Plaintiff California Department of Toxic Substances Control is a state agency

17  organized and existing under the laws of the State of California.  DTSC is the state agency

18  responsible under state law for determining whether there has been a release or threatened release

19  of a hazardous substance into the environment and whether response action is necessary.

20                                DEFENDANTS

21  Sterling Centrecorp Inc.

22      7.    Defendant Sterling Centrecorp Incorporated ("Sterling") is a corporation

23  organized and existing under the laws of Canada and has its principal place of business in

24  Markham, Ontario, Canada.  Sterling, through its corporate predecessors, owned or operated the

25  Lava Cap Mine at the time of disposal of hazardous substances at the Site.

26  Stephen P. Elder and Elder Development, Inc.

27      8.    Defendant Stephen P. Elder ("Elder") is an individual, residing in California, who

28  owns part of the Site and is the sole owner of Elder Development, Incorporated.

COMPLAINT FOR RECOVERY OF RESPONSE COSTS

3

9.    Defendant Elder Development, Incorporated ("Elder Development"), organized and existing under the laws of California, has its principal place of business in Grass Valley, California, and is an owner of the Site.

## CERCLA STATUTORY SCHEME

10.    Section 104(a) of CERCLA, 42 U.S.C. § 9604(a), provides that whenever any hazardous substance, pollutant, or contaminant is released into the environment, or there is a substantial threat of such a release into the environment, the President is authorized to act, consistent with the National Oil and Hazardous Substances Pollution Contingency Plan ("NCP"), 40 C.F.R. Part 300, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance, pollutant, or contaminant or take any other response measure consistent with the NCP that the President deems necessary to protect the public health or welfare or the environment.

11.    The President's authority under Section 104(a) of CERCLA, 42 U.S.C. § 9604(a), has been lawfully delegated to the Regional Administrator of Region IX of EPA.

12.    Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides that certain parties are liable for the United States' and DTSC's response costs incurred under CERCLA:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section –

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessels owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for–

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan . . . .

13.    Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides that interest on

1  response costs incurred by the United States and/or a state is recoverable.

2      14.  Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), provides that in actions

3  for recovery of costs, "the court shall enter a declaratory judgment on liability for response costs

4  or damages that will be binding on any subsequent action or actions to recover further response

5  costs or damages."

6  GENERAL ALLEGATIONS

7      15.  The Lava Cap Mine Superfund Site is situated approximately 5 miles southeast of

8  Nevada City, California and includes portions of Little Clipper Creek drainage, Clipper Creek

9  drainage, Little Greenhorn Creek, Lost Lake and the underlying groundwater.  The Lava Cap

10  Mine, which is part of the Site, occupies approximately 30 acres in a rural residential area of the

11  Sierra Nevada foothills.  Gold and silver mining activities were initiated at the Lava Cap Mine

12  (formerly known as the Central Mine) in 1861.  The Banner Mine, which lies approximately 1.5

13  miles north of Lava Cap Mine, began operation in 1860.

14      16.  During the initial operating period from approximately 1860 to 1918, intermittent

15  and relatively small-scale mining operations occurred at both mines.

16      17.  In 1932, the Lava Cap Gold Mining Corporation ("LCGMC") acquired both the

17  Lava Cap and Banner Mines along with other mining tracts and operations in the area.  LCGMC

18  constructed a floatation plant to process the ore from its newly acquired properties.

19      18.  In 1934, mining operations began again at both mines.  At approximately the same

20  time, LCGMC connected the two mines by several underground tunnels.  Ore from the Banner

21  Mine was transported via these tunnels to the Lava Cap Mine and brought to the surface.  The ore

22  was then processed in the Lava Cap mill.

23      19.  Between 1934 and 1943, the Lava Cap Mine was one of the largest gold mines

24  operating in California, producing approximately 270,000 ounces of gold and 2.3 million ounces

25  of silver.

26      20.  In 1943, the Lava Cap Mine ceased operations pursuant to an Executive Order

27  issued by the War Production Board, which prohibited the production of non-strategic metals

28  during World War II.

COMPLAINT FOR RECOVERY OF RESPONSE COSTS

1       21.  The mining operations resulted in two piles of mining waste at the Site:  a waste

2 rock pile and a mill tailings pile.  The mill tailings, which are also known as rock flour, are

3 extremely fine-grained materials with high concentrations of arsenic that are easily suspended in

4 water and are susceptible to being carried offsite.

5       22.  A log dam was built on the Lava Cap Mine property to hold the mill tailings in

6 place.

7       23.  A second dam, known as Lost Lake Dam, was constructed as a mill tailings

8 impoundment, creating Lost Lake.  Discharges of arsenic-contaminated tailings from the Lava

9 Cap Mine into Little Clipper Creek flowing along the creek to the Lost Lake Dam have been

10 occurring since at least 1934.  Even under normal, non-storm conditions, the Lava Cap Mine

11 discharged between 50 and 200 gallons of contaminated water per minute.

12       24.  In 1952, New Goldvue Mines Limited ("NGV") (which, through a series of

13 corporate name changes, would become Sterling) acquired all the assets and liabilities of

14 LCGMC.  NGV paid for LCGMC's stock entirely with its own stock; NGV continued in the

15 same business LCGMC had been performing; LCGMC's shareholders became NGV

16 shareholders; LCGMC liquidated after the sale of its stock; and NGV assumed LCGMC's

17 liabilities.  While NGV arranged for title to the Lava Cap Mine to be held by its wholly-owned

18 California subsidiary, Keystone Copper Corporation ("Keystone"), NGV actively operated the

19 property.  After the acquisition of the Lava Cap Mine, NGV conducted significant inspections,

20 tests, and interviews at the Site.  In addition, NGV engaged contractors regarding the feasibility

21 of holding the property for future gold mining activities.  NGV also arranged for sale of mine

22 equipment and disposal of other assets within California.  These activities required visits to

23 California by NGV personnel.

24       25.  During NGV's and Keystone's ownership and operation of the Site, arsenic-

25 contaminated water and tailings were released from the property into the environment.

26       26.  In addition to these ongoing discharges, in 1979, the log dam partially collapsed

27 due to rotting logs and long-term neglect of proper maintenance.  This failure resulted in a

28 sudden and significant discharge of tailings into Little Clipper Creek.

1    27.  In 1979, the Central Valley Regional Water Quality Control Board ("the Board")

2  and the California Department of Fish and Game investigated this discharge and found that the

3  discharge had resulted in arsenic-contaminated tailings entering Little Clipper Creek and flowing

4  downstream.

5    28.  Also in 1979, the Board issued a Complaint of Discharge letter, followed by a

6  Cleanup and Abatement Order to Keystone, which held title to the Lava Cap Mine at the time,

7  and to two individual lessors.

8    29.  On February 23, 1979, NGV changed its name to Lava Cap Resources Ltd.  On

9  September 26, 1985, Lava Cap Resources Ltd. changed its name to Lava Capital Corporation.

10  On February 8, 1988, Lava Capital Corporation changed its name to Samoth Capital Corporation.

11  On May 29, 2000, Samoth Capital Corporation changed its name to Sterling Financial

12  Corporation.  Finally, on June 8, 2001, Sterling Financial Corporation became Sterling

13  Centrecorp Inc.

14    30.  In 1989, Banner Mountain Properties, Limited ("Banner Mountain"), a now-

15  cancelled California limited partnership, acquired the Lava Cap Mine property from Keystone.

16  Following the acquisition, Banner Mountain unsuccessfully attempted to develop the property for

17  residential development.  Elder was the general partner of Banner Mountain.

18    31.  In 1992, Banner Mountain deeded the Lava Cap Mine property to another

19  California corporation, Lava Cap Gold Mining Corporation ("New LCGMC"), a different entity

20  than the original LCGMC.  Elder was the general partner of the New LCGMC.

21    32.  In 1994, the New LCGMC deeded parcels of Lava Cap Mine, with the exception

22  of one parcel (Nevada County Assessor Parcel Number ("APN") 39-160-25), to Elder in his

23  individual capacity.

24    33.  Thereafter, in 2003, Elder transferred title to three of the Lava Cap Mine's parcels

25  (APN 39-160-27, 39-160-28, 39-160-29) from his individual ownership to Elder Development.

26  And, in 2005, when New LCGMC was dissolved, ownership of the remaining Lava Cap Mine

27  parcels reverted back to Elder in his individual capacity.

28    34.  During the current Site ownership by both Elder and Elder Development, arsenic-

COMPLAINT FOR RECOVERY OF RESPONSE COSTS

1  contaminated water continues to be released from the property into the environment.

2  35.  On or about January 1, 1997, the upper half of the log dam completely collapsed,

3  discharging over 10,000 cubic yards of additional tailings into Little Clipper Creek.

4  36.  The discharges spread tailings contaminated with arsenic into Little Clipper Creek

5  and downstream to Clipper Creek and Lost Lake where they have accumulated in the sediment

6  and surrounding soil.

7  37.  After this collapse, DTSC, along with staff from the California Department of

8  Fish and Game and the Nevada County Department of Environment Health inspected and tested

9  soil and water at the Lava Cap Mine and down gradient areas.  In June 1997, DTSC issued an

10  information sheet warning of potential hazards from contact with sediment at the Site.

11  38.  In October 1997, the EPA Region IX Emergency Response Section determined

12  that the conditions associated with the tailings release from the Lava Cap Mine met the NCP

13  criteria, 40 C.F.R. Part 300.415(b)(2), for a removal action.

14  39.  During 1997 and 1998, EPA conducted a removal action at the Site to address

15  releases of tailings, stabilize the remaining tailings pile, and improve drainage.

16  40.  Also, in 1998, EPA evaluated the Site to determine if the potential risks to human

17  health and the environment posed by the Site warranted listing it on the National Priorities List

18  ("NPL"), pursuant to 42 U.S.C. § 9605(a)(8)(B).  Based on this evaluation, EPA added the Site

19  to the NPL in January 1999, 64 Fed. Reg. 2942 (Jan 19,1999).

20  41.  Since the Site has been listed on the NPL, EPA has been conducting its remedial

21  investigation and feasibility studies.  In September 2004, EPA issued a Record of Decision,

22  selecting a remedial action for the Mine Area Operable Unit of the Site.  EPA continues to work

23  on its remedial investigation and feasibility studies for the remainder of the Site.

24  42.  In September 2005, construction of the remedial action for the Mine Area

25  Operable Unit began and the United States' and DTSC's response actions are ongoing.

26  43.  Through April 30, 2008, EPA has incurred $21,365,002.14 in response costs for

27  the Site, and it anticipates that it will continue to incur additional response costs.

28  44.  Through March 31, 2008, DTSC has incurred $717,143.16 in response costs for

COMPLAINT FOR RECOVERY OF RESPONSE COSTS

8

1 | the Site, and it anticipates that it will continue to incur additional response costs.

2 | FIRST CAUSE OF ACTION

3 | (Claim for Recovery of Response Costs Pursuant to Section 107(a) of CERCLA)

4 |     45.  Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1

5 | through 44 as if set forth here.

6 |     46.  The Lava Cap Mine Superfund Site is a "facility" within the meaning of Section

7 | 101(a) of CERCLA, 42 U.S.C. § 9601(a).

8 |     47.  Arsenic is a "hazardous substance" as defined by Section 101(14) of CERCLA, 42

9 | U.S.C. § 9601(14).

10 |     48.  The discharges of arsenic-contaminated tailings and arsenic-contaminated water

11 | from Lava Cap Mine are "releases" of hazardous substances into the environment from the

12 | facility within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

13 |     49.  Each Defendant is a "person" within the meaning of Section 101(21) of

14 | CERCLA, 42 U.S.C. § 9601(21).

15 |     50.  As a result of the releases or threatened releases of hazardous substances from the

16 | Site, the United States and DTSC have participated in response actions and incurred response

17 | costs, including the costs of oversight and enforcement costs, within the meaning of Section

18 | 101(25) of CERCLA, 42 U.S.C. § 9601(25).

19 |     51.  The response actions at the Site and the costs incurred in relation to such response

20 | actions were not inconsistent with the relevant provisions of the NCP, 40 C.F.R. Part 300.

21 |     52.  Each of the Defendants is liable, jointly and severally, pursuant to Section 107(a)

22 | of CERCLA, 42 U.S.C. § 9607(a), for all of the United States' and DTSC's response costs

23 | incurred at or in connection with the Site.

24 | SECOND CAUSE OF ACTION

25 | (Declaratory Relief)

26 |     53.  Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1

27 | through 52 as if fully set forth here.

28 |     54.  Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), provides that "the court

COMPLAINT FOR RECOVERY OF RESPONSE COSTS

1  shall enter a declaratory judgment on liability for response costs or damages that will be binding

2  on any subsequent action or actions to recover further response costs or damages."

3      55.  The United States' and DTSC's response actions at the Site are ongoing, and they

4  expect to incur substantial response costs in the future.

5      56.  The United States and DTSC seek a declaratory judgment that the Defendants are

6  liable, without regard to fault, to the United States and DTSC, in any subsequent action for future

7  response costs incurred at the Site by the United States and DTSC.

8                              <u>PRAYER FOR RELIEF</u>

9      WHEREFORE, Plaintiffs United States and California Department of Toxic

10  Substances Control pray for relief as follows:

11      A.  For a judgment that the Defendants are jointly and severally liable to the United

12  States for all response costs incurred by the United States as a result of the release and threatened

13  release of hazardous substances from the Lava Cap Mine Superfund Site, in an amount of at least

14  $21,365,002.14 plus prejudgment interest;

15      B.  For a judgment that the Defendants are jointly and severally liable to DTSC for all

16  response costs incurred by DTSC as a result of the release and threatened release of hazardous

17  substances from the Lava Cap Mine Superfund Site, in an amount of at least $717,928.31 plus

18  prejudgment interest;

19      C.  For a declaratory judgment that the Defendants are jointly and severally liable to

20  the United States and DTSC for all future response costs incurred by the United States and DTSC

21  as a result of the release and threatened release of hazardous substances from the Lava Cap Mine

22  Superfund Site;

23      D.  For enforcement costs, including costs of this suit and attorneys fees;

24      E.  And for all other relief the Court deems just and appropriate.

25

26

27

28

COMPLAINT FOR RECOVERY OF RESPONSE COSTS

1  Dated: 30 July 2008

2  RONALD J. TENPAS
   Assistant Attorney General
   Environment & Natural Resources Division
3  United States Department of Justice

4

5  PATRICIA L. HURST
   District of Columbia Bar No. 438882
6  Trial Attorney
   ESPERANZA ANDERSON
7  Pennsylvania Bar No. 62582
   Trial Attorney
8  Environmental Enforcement Section
   Environment & Natural Resources Division
   United States Department of Justice
9  P.O. Box 7611
   Washington, D.C. 20044
10 Telephone: (202) 307-1242
   Fax: (202) 514-2583
11 Email: patricia.hurst@usdoj.gov
         esperanza.anderson@usdoj.gov

12

13 MCGREGOR W. SCOTT
   United States District Attorney

14 SYLVIA QUAST
   Chief
15 Defense Litigation Unit
   United States Attorney's Office
16 Eastern District of California
   501 I Street, Suite 10-100
17 Sacramento, CA 95814
   Telephone: (916) 554-2740

18 Attorneys for Plaintiff United States of America

19

20 EDMUND G. BROWN JR.
   Attorney General of the State of California
   MATTHEW J. RODRIGUEZ
21 Chief Assistant Attorney General
   KEN ALEX
22 Senior Assistant Attorney General
   SALLY MAGNANI KNOX
   Supervising Deputy Attorney General

23

24 KIRK MCINNIS
   California Bar No. 130952
25 Deputy Attorney General
   Telephone: (510) 622-2191
26 Fax: (510) 622-2270
   Email: Kirk.McInnis@doj.ca.gov

27 Attorneys for Plaintiff California Department of Toxic
28 Substances Control

COMPLAINT FOR RECOVERY OF RESPONSE COSTS

11